Chief Justice Robertson
delivered the Opinion of the Court.
In 1816, James Davis devised to his daughter, Jane Bridges, then the wife of Absalom Bridges, a female slave and “her increase to be at her own disposal in true faith to her and her heirs forever.”
Afterwards, the husband was possessed of the said slave and her children until his death, which occurred some years after that of the testator. But, during his life, he disclaimed title to them, and repeatedly declared that they were the separate property of his wife. And after his death, his administrator refused to have them appraised, or to take them from the surviving widow;, because, as he said, they belonged exclusively to her, in her own absolute right as devisee.
If the adm’r, in such case, takes immediate possession of the slaves, the widow can maintain no action at law for them; for the adm’r has the legal right, and hers is but an equity—not recognized at law.
But the adminis" trator may acknowledge, or assent to, her right—which, after the death of her husband, she may hold with•out the intervention of a trustee —and as she will then have the legal, as well as the equitable title, neither he, nor afly subse quent adm’r, de bonis non, can legally take the slaves from her, or (if taken) resist her action to, recover them.
Some years after the death of Bridges—but how long does not appear, his administrator having also died, the defendant in error, having been appointed administrator de bonis non, took the slaves from the possession of the plaintiff, and hired them out, as administrator.'
To obtain restitution of them, the plaintiff sued him in detinue. And, on the trial, upon the general issue, the Circuit Court, upon the foregoing facts, having instructed the jury to find for the defendant, verdict and judgment were accordingly rendered in bar of the action.
According to a statute of this state, slaves owned by a woman at the time of her marriage, or which shall have come to her during coverture, vest in her husband, as chattels, under the like circumstances, vest in him, according to the doctrines of the common law. And therefore, as, according to the common law, a feme covert cannot hold a legal interest in a chattel during coverture, the will of James Davis vested the legal right in Absalom Bridges, to the property bequeathed to his wife; and, of course, the same legal title passed, by operation of law, to his administrator.
But, as, according to the doctrines of the civil law, a max-ried woman may hold a legal title to chattels separately from her husband, Courts of Equity have so far adopted the same doctrines, as to recognize and protect rights in femes coverts separate from those of their husbands. And, as the will of Davis manifested a clear intention that his daughter, Mrs. Bridges, should have a separate estate in the property devised to her, a Court of Equity would have deemed her husband, on whom the legal title was cast, a trustee for her benefit; and might, on her application, have appointed some other trustee, or compelled the husband, or his administrator, to execute and secure the trust.
Had the administi'ator, in the first instance, claimed the property as that of his intestate, and taken possession of it as such, the plaintiff could not have maintained detinue against him; because his right would have been legal, and her’s equitable only: and, in an action at *612 law, an equitable title cannot prevail or be considered, and therefore, in such a case, under such circumstances, the instruction given to the jury by the Circuit Judge, in this case, would have been perfectly and unquestionably proper; and the plaintiff’s only remedy would have been in. a Court of Equity.
But, as the first administrator held the legal title in trust for the plaintiff, and was under an equitable obligation to execute it; and as she was, after her husband’s, death, papable, of acquiring and holding the legal as well as equitable right, he (the administrator) might have surrendered to her ,his title without question or responsibility, unless something for preventing it had appeared in proof—and especially, as his intestate had disclaimed all title.
If the administrator did surrender his title, the plain ■* tiff’s right was complete at law, as well as in equity; and such a surrender of the mere legal title might be implied, as well as expressed.
Facts, proved on the trial, conduced, in some degree, to the inference that the first administrator had made such a surrender of the legal title. The jury had a right to decide as to the true effect'of those facts. And there-; fore, it seems to us, that the Circuit Court erred in peremptorily instructing the jury to find for the defendant.
Wherefore, it is considered that the judgment be reyersed, and the cause remanded for a new trial.