GRIFFITH'S AD'R.
*vs*
GRIFFITH.

---

# Harvey Griffith's Ad'r. *vs* Matilda Griffith.

## APPEAL FROM THE LEWIS CIRCUIT.

*Husband and wife.    Trusts and Trustee.*

JUDGE MARSHALL delivered the opinion of the Court.

THIS bill was filed by Matilda Griffith, widow of Harvey Griffith, to obtain from the administrator, the possession of a female slave, Harriet, alledged to have been conveyed by the father of the complainant, for her sole and separate use, and which the admidistrator had taken from her possession and control, after her husband's death, and intended to appropriate as a part of the decedent's estate, to the payment of his debts.   The instrument under which the complainant claims, bears date on the 2d day of January, 1833, when A. Stratton, the donor, appears to have been the owner of the slave, with the absolute right of disposition.   The deed is attested by two witnesses, but was afterwards, on the 21st day of January, 1833, acknowledged by Stratton, and recorded in the Office of the County Court of Lewis county, in to which the parties resided.   The possession, which seems have been with Griffith and wife, before and at the date of the deed, but for less than five years remained with them until the death of Griffith, in 1840, when the administrtor

CHANCERY.

*Case* 31.

*Oct.* 3.

The case stated.

GRIFFITH'S AD'R.
vs
GRIFFITH.

permitted the slave to remain in the possession and control of the complainant, and omitted to include her in the inventory of the decedent's estate. From which fact an inference arises in support of the allegation of the bill, that the slave was recognised by the husband and others, as the separate property of the wife. But this fact is of little importance, except as going to show that the husband was cognisant of the deed, and approved it. The right of the complainant must depend upon the deed itself—upon the intention of the donor as evidenced thereby, and upon the efficacy of the deed, or the power of the Court to carry out that intention.

*The deed under which complainant claims.*

This is the deed: "Know all men by these presents, that Aaron Stratton, of Lewis county, hath this day bargained, sold and delivered unto Matilda Griffith, one negro girl by the name of Harriet, aged 9, 10 or 11 years, for and in consideration of her part of the money left her by her grand mother, which I have received, and as the records of the Clerk of Lewis show I was authorzed to receive. And by these presents, doth bargain, sell and deliver unto the said Matilda, for her own proper use and benefit forever. The receipt whereof is hereby acknowledged. In testimony whereof, I subscribe my name and affix my seal, this second of January, 1833." Which was signed, sealed and attested, and afterwards acknowledged and certified as a recorded instrument.

The first question is, whether this deed sufficiently indicates the intention, that Mrs. Griffith should have a separate property in the slave, free from the marital rights of the husband. A second question is, whether, though such intention be sufficiently indicated, the intended use to the wife must not fail for want of a trustee to hold the legal title, and prevent its vesting in the husband.

*A deed for a slave by a father to his daughter, a married woman, for her own proper use and benefit forever, having it recorded construed as conveying to her a separate property in the slave, &c.*

That the donor or grantor, intended to vest a property and use, in Mrs. Griffith exclusively and free from the control or disposition of her husband, we think is manifest from several circumstances. If he had intended to transfer the property in the ordinary way, and not to create a separate use for the wife, why did he make a deed, when the title might have been transferred by parol? And why did he have the deed recorded, if it were not

for the purpose of manifasting to the world, that notwith-
standing the possession of the husband, the beneficial
interest and use was in the wife ?   The recording of the
instrument could have been useful for no other purpose,
but that of securing such an interest to her.   And it may
be further asked, why, if he did not intend to secure an
exclusive right and interest to the wife, did he make the
deed to her instead of making it directly to the husband?
The transfer of the slave was intended to be in payment
of a legacy due to the wife, which her father had receiv-
ed, and of course, in trust for her.   He might have paid
it to the husband unconditionally, or he might have in-
sisted on his making a settlement on the wife.   His trans-
ferring the slave to the wife, in discharge of that legacy,
tends to show that he did not intend to pay it to the hus-
band, but to secure it to the wife. It is immaterial wheth-
er the legacy was thereby actually discharged as against the
husband or not.   We are looking for the motive and in-
tent of the deed, and not for its operation as a satisfaction
of the legacy.   In consideration of this legacy, then, he
conveys the slave to the wife, "for her *own proper use
and benefit forover."*  And these words, as we think, de-
note strongly an exclusive and separate use intended for
the wife.   For though in a deed of land, such words are
usual,  and almost universal, having  been adopted in re-
ference to  the statute  of uses; and  although in a con-
veyance of land even to a *feme covert,* they might therefore
be  entitled  to  no  operation  as  excluding  the  marital
rights of the husband, or as indicating any intention of so
doing.   Yet as such words never  were deemed essential
for the transfer of the title of personal chattels, and have
never grown into use in  conveyances of  that sort, the in-
troduction of  them into a  deed of personalty, is of itself
sufficient to show that they were intended  to have effect,
and should entitle them to have their full force and mean-
ing,  in  giving  interpretation to the instrument, if they
can have any effect.   Such words in a conveyance of per
sonalty, when the use  and the  title are intended to vest
in the same person, would be useless and extraordinary.
The title  itself would  carry the use, and it is unusual to
express the use  in such cases.   But when the use is in-

GRIFFITH'S AD'R.
*vs*
GRIFFITH.

tended to be separate from the title, it must, in deeds of personalty as well as of realty, be expressly declared. Now, upon a deed of personalty, to a married woman, the law will vest the title in the husband, and if the use is not intended to follow it, there must be an express declaration of a different use. In every conveyance, the words now in question denote emphatically the intention, that the use shall be in the person referred to, whether such person be the grantee or another, and whether they be necessary to create such a use or not. In a conveyance of personalty to trustees for the use of a married woman, the use is separated from the title, and vests in her, and there being nothing to exclude the right of the husband, the law gives him in such a case, the use, as it would give him the legal estate if vested in the wife.

Any words in a conveyance of personal estate to a married woman which show an intention to secure the use to a *feme*, excludes the husband, and secures a separate use to the wife.

But in a conveyance directly to the wife, any words which sufficiently show the intention to secure a use to the wife, or to separate for her benefit, the use from the title, must also indicate an intention to exclude the husband. For the title being by operation of law upon the deed vested in the husband, there is no separation of the use from the title, and the words declaring a use for the wife are wholly inoperative, and mean nothing, unless they indicate an intention to exclude the husband, and give the separate use to the wife, when the title is in the husband, or is to go to him, a separation of the use from the title, is *ipso facto*, en exclusion of the husband from the use. And as it may be assumed, that the principle of law which vests in the husband the personal property of the wife in possession, is universally understood, so it may be assumed with reasonable certainty, that the sole object of introducing in a deed of personalty to the wife, words which show that the use is to remain with her, is to separate the use from the title which will go to the husband, and thus to exclude him from the use. The words of this deed, which declare a use for the grantee, may have this operation, but they can have no other. They must, therefore, be wholly rejected in giving interpretation to the instrument as having no meaning or effect, when a meaning and operation can be given to them, which would be contrary to the established rules of con-

struction; or they must be regarded as indicating the intention to separate the use from the title, and therefore, necessarily to exclude the husband and vest the use as a separate property in the wife.

It is true that the words, "for her sole and separate use," with or without the additional words, "free from the control of her husband," as they indicate most clearly and briefly the very end to be attained, constitute the most appropriate form of expression for conferring a separate estate on the wife to the exclusion of the husband. But there is no particular form of expression necessary for the creation of such an interest. The question is one of intention, and is to be solved by the established rules of interpretation. The words, "for her own proper use and benefit," by their own force, denote a peculiar, and therefore a separate and exclusive use; and as there is nothing in the context to diminish their force in this respect, but much in all the circumstances, intrinsic and extraneous, to confirm and increase it, we are satisfied that these expressions in the deed before us, were intended to designate a separate use and property in the wife, and should, therefore, be deemed equivalent to the words, "for her sole and separate use." In the English Chancery the words, "for her own use," in a gift or bequest to a married woman, have been construed under different circumstances, as being sufficient or insufficient to create a separate estate; and the words, "to be at her disposal," and other similar expressions, have been held sufficient. The British cases on the subject are collated by Mr. Clancy, in his work on the rights of husband and wife, from page 262 to 270; and in the case of *Bridges* vs *Wood*, (4 *Dana*, 610,) it was decided by this Court that a devise of a slave to a married woman, "to be at her disposal in true faith, to her and her heirs forever," created a separate use and property in the wife, and the legal title passed to the husband in trust for her separate use. These cases, it is true, arose on the construction of wills; but the object being in the case of a deed as of a will, to ascertain the intention merely, the same rule of construction must be applicable in both cases.

No particular form of expression is necessary to give to a *feme covert* a separate estate in personal property—any words which show the intention of the grantor to be such will suffice.

GRIFFITH'S AD'R
vs
GRIFFITH.

Where a convey-
ance is made of
personal proper-
ty to a *feme co-*
*vert,* but which
shows an inten-
tion that it is for
the separate use,
if there be no
Trustee, the hus-
band will be held
to be a Trustee
for the benefit of
the wife, and
hold the legal es-
tate for her sep-
arate use, which
is not conflicting
with the statute
of 1798, (*Stat.*
*Law,* 1477.)
The same con-
struction is giv-
en to conveyan-
ces by will to the
*feme.*

The question then is, whether as the present deed man-
ifests clearly and sufficiently, the intention of the grantor
to vest a separate use and estate in the wife, free from the
control of her husband, a Court of Equity will uphold
and maintain that estate, by regarding the husband as a
Trustee for her use, or whether the intention must fail,
not because it is not sufficiently manifested by the instru-
ment, but because there being no Trustee, the title pas-
sed, by operation of law, to the husband. The case of
*Bridges* vs *Wood,* before cited, decides that in such a
case arising on a will, the husband and his administrator
after him, will be regarded as holding the legal title in
trust for the wife, and expressly limits the effect of the
34th section of our statute of 1798, (*Stat. Law,* 1477,)
to the legal title. The Supreme Court of Virginia, in the
case of *Wallace* vs *Talliaferro and wife,* (2 *Call's Rep.*
447,) decided in the year 1800, had construed the third
and fourth sections of the Virginia act of 1727, from
which the thirty third and thirty fourth sections of our act
of 1798 were taken, as having no other effect than to place
slaves, in regard to the several particulars therein refer-
red to, on the same footing as personal chattels at com-
mon law, and especially determined that the fourth sec-
tion of the Virginia act, which is identical in terms with
the thirty fourth section of ours, gave the husband no grea-
ter interest in the slaves of the wife, than by the common
law he has under the same circumstances, in her personal
chattels. The case of *Bridges* vs *Wood* is based upon
the same construction of our statute, and in this it ac-
cords with numerous other cases in which that construc-
tion is expressly or tacitly recognized; *Turner* vs *Da-*
*vis's adm'r.* (1 *B. Monroe,* 151,) and cases there cited.
Upon this ground then, we are at liberty to refer to the
British decisions as evidence of the law with regard to
the respective rights of the husband and wife in the case
of a slave conveyed to the latter for her separate use.
And it seems to be well settled by the current of modern
authority, that in case of a gift of personalty to the wife
for her separate use, the husband will be regarded in
equity as Trustee only, his marital rights being controlled
and prevented from attaching as to the beneficial use, by

the manifest will and intention of the donor; (*Clancy on Rights*, 255 to 261.) It would be strange indeed, if the husband could equitably hold the property to the exclusion of the wife, under a gift or conveyance, when by the terms of the instrument under which he claims, it was the manifest intention of the donor or grantor, that she should have a property exclusive of him. A Court of Equity will enforce a compliance with this intention, and will hold him as a Trustee or appoint another, though no Trustee be nominated by the donor. In the case of *Bennet* vs *Davis*, (2 *P. Williams*, 316,) the Master of the Rolls said, there was no difference when the trust was created by act of the party, and when by act of law, and that where the testator had a power to devise the premises to Trustees for the separate use of the wife, the Court, in compliance with his declared intention, will supply the want of them, and make the husband Trustee.

These principles have been declared and acted on chiefly in the case of wills; but does not the same equity arise in favor of the wife in the case of a deed, and why should the Court in that case more than in the case of a will, refuse to supply the want of a Trustee, when the trust is evidently created or intended in the one case as much as in the other, and when it would be as much against the intention of the donor, and therefore, as unconscientious for the husband to defeat the interest of the wife under a deed as under a will? There can be no essential difference of principle or of equity between the cases. The Court interposes in case of a will, not for the sake of the donor, but for the sake of the donee, and to prevent her being unconscientiously deprived of the intended benefit which the donor had a right to confer. The Court, therefore, has interposed and applied the same principle to other cases, and it is laid down by Clancy, page 261, that the principle would equally apply to every form of conveyance by which a limitation for the use of the wife is made, as in the case of *Tyrrell* vs *Hope*, (2 *Atk.* 558;) but the case of *Smith* vs *Smith's adm'r.* (6 *Munford*, 581,) is an express authority to the effect that in case of a conveyance of a slave to a married woman, for her separate use, by deed, she will be regarded as having a sepa-

HARVARD LAW SCHOOL LIBRARY.

rate estate, and that she may resist the claim of her husband's administrators, even in an action of detinue brought against her.

The fact that this deed was made, not in consideration of natural love and affection, but in consideration of a legacy due to the wife, does not weaken but rather strengthens the equity of her case; and upon the whole case, we are of opinion that she had a right to the aid of the Court in recovering the possession of the slaves from the administrator, because he was violating his trust, and because, upon the death of the husband there was no further need of holding the title separate from the use, and the Court of equity should unite them or regard them as being united in the wife.

Wherefore, the decree is affirmed.

*Payne & Waller* for appellant: *Beatty* for appellee.

---

COVENANT.

*Case* 32.

*Oct. 3.*

The case stated.