JUDGE COFER
delivered the opinion or the court
The appellee, Bettie Galbreath, brought this suit in equity against the appellants on a bond of indemnity executed by them to the sheriff of Christian County, in order to secure the levy of an execution in his hands in favor of Campbell and wife and against the appellee’s husband, W. B. Galbreath, upon a stock of goods as the property of the execution defendant. She alleged, in substance, that she had been twice married before her marriage with Galbreath; that she had one child by her first husband, which was then about four years of age; that Galbreath was insolvent; that her second husband had devised to her his entire estate, and that at the time *461 of her last marriage she owned both real and personal estate, which had remained in her possession and under her exclusive control ever since, and that her husband had never in any way taken possession or control of it, and that the property devised to her by her deceased husband was all she had for the support of herself and child.
She also alleged that on the 14th of December, 1874, Gal-breath executed to her his note for $3,000, payable in twelve months, with ten per cent interest, for money loaned and to be loaned by her to him for the purchase of the stock of goods sold under Campbell’s execution, and to secure the note he executed to her a mortgage on the goods; that she had advanced on the mortgage the sum of $811.45, the price of the goods; and she prayed judgment against the obligors in thé bond for the value of the property sold.
The husband of the appellee was made a defendant, and the other defendants demurred to the petition upon the grounds— first, that there was a defect of parties plaintiff; and second, that the facts stated did not constitute a cause of action.
The court overruled the demurrer, and that action of the court presents the first question for decision.
Where a married woman is a party her husband must be joined with her, except that where the action concerns her separate property she may sue alone, and where the action is between her and her husband she may sue or be sued alone. (Section 49 Civil Code.)
If the appellee had any interest whatever in the goods, such interest was separate estate. A married woman is incapable of holding the legal title to personal property, and a sale of such property to her by her husband, if valid for any purpose, vests in her only an equitable interest which is separate estate; for if not, then, as the husband is the absolute owner of all the personal property which comes to the wife during coverture as general estate, the sale by the husband to *462 the wife, which must be presumed to have been intended to have some effect, would have none whatever. Hence, if a valid sale or gift of- personal property be made by a husband to his wife, although not expressed to be for her separate use, it will be so treated.
As therefore the facts alleged showed that if the appellee had any interest in the goods, such interest was her separate property; she had a right to sue alone; and the demurrer, for lack of necessary parties plaintiff, was properly overruled.
The appellants also demurred on the ground that the facts stated did not constitute a cause of action. That was also overruled, and presents the important question in the case.
Contracts between husband and wife are, by the inflexible rules of the common law, void in toto. This doctrine is based on the fact that the law considers them as one person. But the rule is otherwise in equity. .For many purposes equity treats them as distinct persons, capable of contracting with each other, and their contracts will sometimes be enforced, even against the creditors of the husband. (Ward v. Crotty, 4 Met. 60.)
Upon the facts stated in the petition the appellee’s husband had never reduced to possession the money which she alleged she had loaned to him, until he received it as a loan on the faith of his note and mortgage. The marriage gave him a right to reduce it to possession; but until that right was exercised it was subject to her superior right to have it settled on her, and as long as that right existed in her, her property and money were beyond the reach of his creditors. (Moore v. Moore, 14 B. Mon. 208; Sims v. Spalding, 2 Duvall, 121.)
So long then as the husband neglected to reduce the appellee’s money and property to possession she might have applied to the chancellor, and compelled the husband to make an equitable settlement upon her out of the property, and thus have kept it perpetually beyond the reach of his creditors; *463 and as she might have done so by proper legal proceedings, there would seem to be no reason why he might not voluntarily settle it upon her out of court.
Mr. Bishop, in his admirable work on the Law of Married Women, section 726, says: “The doctrine is a very familiar one — it pervades every department of our law — that what the law will compel parties to do they may do voluntarily, and the transaction will be sustained as valid in whatever circumstances the question may arise. If therefore there are choses in action coming to the wife, or if there is any other fund out of which the court would compel a settlement on the question being brought to its attention by proper proceedings had, the husband may voluntarily make such settlement as the court would order, and it will be sustained every where as valid.”
As therefore the facts alleged showed a case for a settlement on the appellee of at least a part of her property, the voluntary action of her husband in attempting to secure it to her is prima facie valid as against his creditors. That the husband was insolvent, so far from destroying her rights, increases them.
The mortgage to the appellee may not have been the best mode of securing the estate to her, and it may even have been executed for the express purpose of shielding it from the husband’s creditors; but as the fund thus secured did not belong to their debtor, and had never come into a position in which they could reach it for the satisfaction of their debts, no injury was done to them, and they have no right to complain.
We are therefore of the opinion that the second ground of demurrer, so far as it relates to the validity of the mortgage, was not well taken.
The appellants answered and alleged that the goods were purchased on the 8th of December, 1874, and were the property of W. B. Galbreath, and, in substance, that they were paid for by transferring to the vendor a promissory note owned by *464 the appellee at the time of the marriage; and they insisted that by the assignment of the note it was reduced to the possession of the husband, and that its proceeds became his propertju
Upon filing their answer the appellants moved to transfer the case to the ordinary docket, but their motion was overruled.
As we have already said, a married woman is incapable of receiving and holding the legal title to personal property. A gift or sale of such property to her by a third person, unless expressed to be for her separate use, vests the absolute title in the husband; but if the property be expressed to be for her separate use, and the gift or sale be to her without the intervention of a trustee, the legal title will vest in’ the husband, who will be converted by the law into a trustee for the wife, and the beneficial use will vest in her.
But if the sale or gift be by the husband directly to the wife, the legal title will remain in him, and the beneficial use will vest in her as her separate estate, and the husband will be treated as her trustee. The title to the mortgaged property was therefore in the husband as trustee, and by permitting it to be levied on and sold for the satisfaction of his debt he was guilty of a breach of trust, and was jointly liable with the appellants for the injury done to the trust estate; and as the appellee had but an equity she properly sued in a court of equity, and the motion to transfer was rightly overruled. Jones, assignee, v. Johnson (10 Bush, 649.)
Whether the assignment of the note operated to reduce its proceeds to the possession of the husband, so as to defeat the right of the appellee, will depend upon the question whether it was so assigned with the intention on the part of the husband to make it his own, and upon the time at which it was made. If it was assigned at or after the making of tlya mortgage, or after a promise to the appellee that it should be secured by a mortgage, and the appellee consented to the assignment in consideration of the making or agreement to make the mort *465 gage, then she will be entitled to recover the value of the mortgaged property, not exceeding the amount paid therefor in the note or out of its proceeds. But if the note was assigned before the execution of the mortgage, and without an agreement on the part of the husband to secure the amount thereof, or so much of it as was applied to pay for the goods, the assignment was a conversion by him and terminated the right of the appellee to the note and its proceeds, :and she can not recover.
But as the petition is fatally defective, in that it contains no statement of the covenants in the bond or of any breaches thereof, and the judgment must be reversed on that account, we refrain from expressing any opinion upon the facts put in issue by the pleadings.
Wherefore the judgment is reversed, and the cause is remanded with directions to sustain the demurrer, and for further proper proceedings.