JUDGE COFER
delivered the opinion oe the court.
The appellees brought this suit at law against the appellant, alleging that they were the owners of certain personal property, and that the defendant had sold and converted it to his own use.
The defendant answered in three paragraphs:
In the first he denied that the plaintiffs were the owners of the property mentioned in the petition.
In the second he averred that he was administrator of Edward Thompson; that the property mentioned in the petition belonged to his intestate, and he had, as administrator, caused it to be sold, and then held the proceeds in his hands.
In the third he averred that the female plaintiff was formerly the wife of his intestate, and that whatever claim the plaintiffs had to the property grew out of some pretended sale or gift by her husband to her as his wife without considera *26 tion. And he further averred that the personal estate which came into his hands, as administrator, was insufficient to pay the debts of the intestate; that, as administrator, he had a claim and right to the property superior to the claim of the plaintiffs; and that if the plaintiffs had any claim to the proceeds of the property it was subordinate to the claims of creditors; and whether any thing would remain after the payment of the debts could not be ascertained until the estate was settled. With a view to settle the estate he made his answer a cross-petition against the sole heir-at-law of the intestate, and asked that the action be transferred to equity, and that the estate might be settled under the direction of the chancellor.
The motion to transfer was overruled, and a trial was had before a jury, which resulted in a verdict and judgment for the plaintiffs, and this appeal is prosecuted to obtain a reversal of that judgment.
The issues made by the first and second paragraphs of the answer were legal, and presented no ground for transferring the cause to equity.
It was not alleged in the third paragraph that the estate of Thompson, exclusive of the property claimed by the appellees, was not ample to pay his debts. The allegation was that the personal estate that had come to the administrator’s hands was insufficient, but there was no allegation that there was no real estate or not enough to make up any deficiency in the personal assets. It is therefore unnecessary to consider the question whether, if it had appeared from the answer that the property claimed by the appellees was necessary to pay the debts, the appellant, not being a creditor, could raise that question in his character of administrator for the benefit of the creditors of his intestate, or whether the gift of the property by Thompson to the appellee Mrs. Harkness, who was then his wife, being valid and enforceable as against him, is not equally valid against his administrator.
*27 The appellant’s counsel contend, however, that the answer shows that whatever claim the appellees had to the property arose out of a sale or gift made by Thompson to his wife; and that conceding the gift or sale to have been valid, the legal title remained in the husband in trust for his wife, and that at his death it passed to his personal representative; and consequently the appellees had only an equitable interest, and could not maintain an action at law against the administrator who held the legal title, and the court ought therefore to have transferred the case to the equity docket.
A married woman is, by the rules of the common law, incapable of taking and holding the title to personal property, and, as a consequence, if such property be conveyed to her the title flows through her into her husband. And being in contemplation of law under the coercion of her husband, and without a will of her own, she is incapable of taking such property from him by gift or by contract during coverture. (Winebrinner v. Weisiger, 3 Monroe, 32.) But courts of equity have so far modified or restrained these rules as, under certain circumstances, to recognize and uphold her right when the evident intention was to secure the beneficial use of the property to her.
In equity, as at law, a married woman is yet incapable of holding the title to personal property (unless she is empowered to trade as a feme sole), but she may be entitled to its beneficial use. This, however, can only be secured to her when the title is held for her by a trustee. But the chancellor, always fruitful of expedients for carrying into execution those principles of justice which constitute the foundation of equity jurisprudence, is never at a loss to find a trustee to hold the title to property conveyed for the use of those who are disabled by the stern rules of the law to hold it for themselves.
If personalty be conveyed by a third person to a married woman for her separate use, the law intercepts the title intended *28 to be invested in her and vests it in her husband; but the chancellor, intent on carrying into effect the intention of the grantor, seizes upon the conscience of the husband and compels him to hold the property for the benefit of his wife by converting him into a trustee for her.
So, too, if the husband sells or gives personalty to his wife, the law, by treating them as one person, and subordinating the wife as incapable of taking from him, denies effect to his intention ; but equity will interpose, and, recognizing the rule of law that the husband is still the legal owner of the property, will, in order to give some effect to the transaction, treat him as holding as her trustee, and compel him to hold it for her use. (Maraman v. Maraman, 4 Met. 84; Campbell, &c. v. Galbreath, 12 Bush, 459.)
If, therefore, the intestate gave the property in contest to his wife, he held it in trust for her, and that trust was created because, on account of her incapacity to hold the title, it was necessary that it should remain in him. He was a trustee from necessity. The transaction could not otherwise be upheld. He was a trustee for a special purpose, i. e. to prevent the gift, from being defeated.
The trust having been called into existence simply and only on account of the existing necessity, it would seem that when the necessity ceased the trust should cease also, and the title having been retained in the husband by mere implication of law, and the death of the husband having removed the wife’s incapacity and ended the necessity which prevented her from taking the title when the gift was made, the title should vest in her eo instanti, and did not descend to the personal representative of the husband.
It is true that a contrary doctrine is laid down in Bridges v. Wood (4 Dana, 610); but the point, if not unnecessary to be decided, was of minor importance in the case, and does not appear to have been considered with that care which would no *29 doubt have been bestowed upon it if another point disclosed in the record had not been deemed decisive of the case.
That a trust created from necessity or for a special purpose will cease with the necessity which gave rise to it, or upon the accomplishment of the special purpose, seems not only to be sustained by sound reason, but is well supported by eminent authorities.
In Doe d. White v. Simpson (5 East. 162) real estate having been devised upon trust for certain specified uses, it was held that the uses being all answered, those entitled to the estate after the purposes of the trust were accomplished took the legal estate in the land, and might- maintain ejectment for its recovery upon a demise laid in their own names.
The same doctrine was held in Doe d. Player v. Nichols (8 Eng. Com. Law, 92). The will of the father of the lessor ■of the plaintiff contained this clause: “ I give to W. Reade, etc., in trust for my only son Thomas all the rest and residue of all my goods and chattels, and also all my freehold and copyhold lands which I have surrendered to the use of my will, the same to be transferred to him as soon as he shall attain twenty-one years of age.”
After arriving at the age of twenty-one years the son brought ejectment for the land devised in trust for him without having obtained a transfer from the trustees. It was ■objected that the legal title was in the trustees; but the court held otherwise, saying, it might be laid down as a general rule that when an estate is devised to trustees for particular purposes, the legal estate is vested in them as long as the execution ■of the trust requires it, and no longer; and therefore as soon as the trusts are satisfied it will vest in the person beneficially ■entitled to it.....Here all the purposes of the trust might be answered by the trustees taking an estate determinable'on the son’s attaining twenty-one years, and that being ■so they took an estate determinable at that period, and conse *30 quently the legal estate at the commencement of the action was vested in the lessor of the plaintiff.
The analogy between that case and this is striking. The intestate held the title to the property in contest in trust only, because his wife was incapable of holding it. The law created the trust for a particular purpose, and the legal estate was vested in the trustee only so long as was necessary to accomplish the purpose for which the trust was created, and that purpose having been accomplished at the death of the husband, the legal estate vested in the wife, and it might have been sold by her as her own property, or her creditors might have seized it under executions against her. (Perry on Trusts, sec. 653.)
We are therefore of the opinion that at the death of Thompson the legal title vested in his widow, and that she and her present husband had a right to maintain their action at law, even if the legal title was indispensable for that purpose. But we are further of the opinion, that when the purposes of a trust have been accomplished, or when it is created by implication of law, and the necessity which gave rise to it has ceased, the cestui que trust may maintain an action at law either against the trustee or a third person to recover the trust property or for an injury to it, subject, of course, to the equitable rights of the trustee on account of claims against the trust-fund for advances, expenses, and the like.
In Robinson’s adm’r v. Brock (1 Hen. & Mun.), Judge Tucker, of the Court of Appeals of Virginia, said: “ With respect to the objection to the action at law in this case, in consequence of the legal estate being alleged to be in the trustees under the deed of 1788,1 think the position of the appellant’s counsel, that on the death of the husband and wife without children the trust is executed, is correct. But if it were not, still, upon the principles and reasoning in some of the English cases, I think the objection ought not to prevail in this case. *31 For example, in the case of Goodtitle on the demise of Hart v. Knot (Cowp. 43), it is said that it has often been determined ‘that an estate in trust merely for the benefit of the cestui que trust shall not be set up against him; any thing shall rather be presumed; ■ nor shall a man defend himself by any estate which makes a part of the title of the lessor of the plaintiff.’ ” (1 Hen. & Mun. 227.) And Judge Roan, in the same case, announced the same doctrine (p. 220).
This doctrine was again recognized by the Court of Appeals of Virginia in Smith v. Smith (6 Munf. 581), where a slave was conveyed to a married woman for her separate use, and after the death of her husband his administrators sued her in detinue for the slave, and the court held that they could not recover.
And this court, in Griffith v. Griffith (5 B. Mon. 119), recognized that case as “an express authority to the effect that in case of a conveyance of a slave to a married woman for her separate use, she will be regarded as having a separate estate, and that she may resist her husband’s administrators, even in an action of detinue brought against her,” thus in effect overruling that part of the opinion in Wood v. Bridges, where it was said that if the first administrator of the husband “had claimed the property as that of his intestate, and taken possession of it as such, the plaintiff (the widow) could not have maintained detinue against him, because his right would have been legal, and hers equitable only.”
It does not matter that in the one case the widow was plaintiff and in the other a defendant. A legal title which can be set up to defeat the plaintiff will enable the person holding it to sustain an action if the possession of the property should be so changed as to reverse the position of the parties and make the defendant in one action the plaintiff in another.
This doctrine, so rational and so well supported by authorities under the former system of practice, is eminently proper *32 and just under our more liberal system, in which the substantial rights of litigants are less encumbered by technical rules, which too often retarded the administration of justice.
Counsel for the appellant do not deny that if a valid gift was made by Thompson to his wife she has a right to recover the proceeds of that property now in the hands of their client, and to have the legal estate vested in her and her present husband; and this court held, in Griffith v. Griffith, supra, that “upon the death of the husband there was no further need of holding the title separate from the use, and a court of equity should unite them, or regard them as united, in the wife.” But counsel contend that this union can only be effected in equity.
For the reasons given, and upon the authorities referred to, we think the more rational, convenient, and just conclusion is, to regard the legal estate and beneficial use as united by the death of the husband, which put an end to the necessity that separated them; and, as the rulings of the court below conform to this view, the judgment is affirmed.