JUDGE BULLITT
delivered the opinion op the court:
This suit was brought by the appellee, the widow of Francis Maraman, against the appellant, his administrator, to recover the amount of four notes, one of which is as follows:
“Due Martha A. Maraman nine hundred and forty-six dollars for value received of her. July 22, 1855.
F. MARAMAN.”
And another is as follows:
“Due Martha A. Maraman three hundred ninety-two dollars fifty cents, borrowed money. Feb. 2nd, 1855.
F. MARAMAN.”
The other two notes are of the same character.
Mrs. Maraman alleges that she married said F. Maraman in 1852; that she owned by inheritance^ tract of land and an interest in several slaves; that her husband being hard run for money, and much embarrassed, induced her to unite with him in selling said land and slaves, upon an express promise, and with the understanding that he would make her full compensation for the same out of his own property, that he executed said notes to her for the land and slaves, and assured her that they would secure her in the amounts they called for, and that he would pay them in money or property as soon as he got in little better circumstances; and that he died leaving her with a small child and without any means of subsistence.
The administrator, in his answer, does not deny any of these allegations in the manner required by the Code to put the facts in issue. He admits that the decedent, about a month before his death, “informed the defendant that he owed his wife about $1,700, and that he wanted it paid.” He resists recov ery upon the ground — 1st, that the notes are void because of the marital relation between the parties; 2d, that neither the conveyances of the land and slaves nor the obligations of the purchasers contained any provision that the proceeds should not be Maraman’s; 3d, that Maraman obtained credit and was dealt with upon the faith that said proceeds belonged to him; and 4th, that most of said proceeds were used in paying store accounts contracted by Mrs. Maraman, and in purchasing a carriage for her and by her direction. He also says that the *87 decedent’s estate is insufficient, as he believes, to pay his debts, and that he has filed a petition to settle it and for a pro rata distribution among the creditors; and prays that the two suits may be consolidated. No order of consolidation was made.
We need not state the character of the proof, because, in our opinion, it cannot change the status of the parties as fixed by the pleadings.
The circuit judge gave Mrs. Maraman a judgment against the administrator for the amount of said notes and interest, “to be allowed in the action of the administrator for a settlement of the estate, and to be reported by the commissioners;” from which this appeal was taken.
1. That Maraman’s notes are void at law is conceded. The question is whether they are also void in equity.
We are not prepared to admit, as contended by appellant’s counsel, that all contracts between husband and wife are void in equity as well as at law unless they relate to separate estate of the wife.
At law, ante-nuptial executory contracts between husband and wife, to be performed during marriage, are extinguished by the marriage, and rendered as null as if they had been void from the beginning. Yet such contracts have been frequently enforced in equity. (Cannel vs. Buckle, 2 P. Will., 243; Feryer vs. Penton, 1 Vern., 408; Acton vs. Pierce, 2 Vern., 480; Milburn vs. Ewart, 5 T. R., 384; Strong vs. Skinner, 4 Barb. S. C. R., 546; Vanallen vs. Humphreys, 15 Id., 555; Dabney vs. Kennedy, 7 Grattan, 317; Law vs. Smith, 2 R. I., 244.)
At law, as a general rule, executed as wrell as executory contracts between husband and wife, without a trustee, are void. Yet conveyances from husband to wife, without a trustee, have been frequently supported in equity. (Bright on Husband and Wife,vol. 1, page 32, 33; Wells vs. Treadwell, 28 Miss. R., 717; Simmons vs. McElvain, 26 Barb. S C. R., 420; Denning vs. Williams, 26 Conn., 236; Lile vs. Lite's Ex'r., 1 Dev. Eq., 185; Huntly vs. Huntly, 8 Ired. Eq., 250; Ward vs. Crotty, p. 59, 4 Met., decided by this court at its last term.)
At law the husband is entitled to a note given to his wife *88 by a stranger. Yet where the purchaser of land executed a note payable to the vendor’s wife, in pursuance-of an agreement between the husband and wife, and in consideration of her releasing dower, her right to the note was sustained in equity. (Garlick vs. Strong, 3 Paige, 440.)
A husband is legally entitled to his wife’s earnings, but his agreement to give them to her has been held valid in equity. (Slanning vs. Style, 3 P. Will., 337 ; Mangey vs. Hungerford, 2 Eq. Ca. Abr., 156 ; Wood vs. Warden, 20 Ohio, 518.) The authority of Slanning vs. Style and Mangey vs. Hungerford has been, perhaps justly, questioned by Mr. Jacob, (2 Roper's H. & W. 104, n;) not, however, upon the ground that such an agreement would not be binding in equity, but upon the ground that in those cases there was not sufficient evidence of the agreement. In Wood vs. Warden the husband had received f 100 earned by his wife, and given her his note therefor, and his estate was held liable for it in equity.
Executory contracts between husband and wife, without the intervention of a trustee, have been held to. be valid in equity-in several other cases.
In Guth vs. Guth, (3 Bro. C. C., 614,) a husband’s agreement, by deed-poll, for the separate maintenance of his wife, was enforced. That doctrine has been questioned, upon the ground that there was no consideration for the husband’s agreement; and for other reasons which indicate an implied admission of the general power of husband and wife, to make contracts which may be enforced in equity, (2 Bright on. H. & W., 330, and cases cited.) In Livingston vs. Livingston, (2 John. C. R., 537,) a parol agreement between husband and wife, that he should purchase and improve a lot for her and be repaid by the sale of another lot belonging to her, having been partially executed by him, was, at his suit, specifically enforced -against her heiis. And in Huber vs. Huber's adm'r., (10 Ohio, 371,) the court decreed payment of a note given by a husband to his wife for money derived from the estate of her former husband, and to which, when received, her second husband was legally entitled. -
We perceive no ground for the distinction contended for by *89 appellant’s counsel, as existing between contracts of husband and wife, with reference to her- separate estate and other contracts between them. At law their contracts as to her separate estate are void; and we perceive no reason for supporting such contracts in equity, which does not equally apply to any contract which is based upon a sufficient consideration. In Barron vs. Barron, (24 Vermont., 398,) it was said that, “as a general rule, wherever a contract would be good at law, when made with trustees for the wife, that contract will be sustain • ed in equity when made (by husband and wife,) with each other, without the intervention of trustees.” That rule, if so limited as not to affect the rights of third persons, seems tobe fully sustained by the authorities. Maraman had no power to dispose of either the land or slaves of his wife. Her conveyance was necessary to pass the title. We need not cite authority to prove that if, in consideration of her conveying the property for his benefit, he had agreed to pay the value of her interest to a trustee for her separate use, the contract would háve been valid at law.
The fact that there was no trustee intervening between Mrs. Maraman and her husband, cannot defeat her equitable right to the money; because, whenever a separate use is created for a married woman, whether by her husband or by a stranger, whether by an executed or executory contract, equity will, if necessary, make her husband her trustee. (2 Bright on H. & W., 214, and sequel.)
Nor was it necessary, in order to give her a right to the money for her separate use, that the notes should be so expressed. Though a stranger’s conveyance of property, or covenant to pay money to a married woman, or to a trustee for her, in order to give her a separate use, must contain words indicating such intention, it seems to be well settled that such words are unnecessary in a husband’s conveyance or covenant. (Denning vs. Williams, 26 Conn., 226 ; Huber vs. Huber, 10 Ohio, 371 ; Wood vs. Warden, 20 Ohio, 518 ; Gaines adm'x, vs. Poor, 3 Met., 503; Ward vs. Crotty,p. 59, 4 Met.) Maraman must be regarded as having agreed to pay the money to his wife for her *90 separate use; otherwise his notes, which he must have designed to have some effect, can have none in law or equity.
2.The Revised Statutes (chap. 47, art. 2, sec. 2,) contain this provision : ‘‘Husband and wife may sell and convey her chattel real or slave, in the same mode as the land of the wife may be sold and conveyed; and the proceeds shall be his, unless otherwise expressly provided in the conveyance or the obligation of the purchaser.” This provision does not apply, nor is there any similar provision applying to a wile's real estate. Its precise object and effect need not now be decided. Mrs. Maraman is not claiming the proceeds of her slaves. She is suing upon her husband’s contract to pay her a certain sum of money. She joined him in selling the slaves in order to give him the proceeds, and for that consideration he gave her his note. A provision in the conveyance, that the proceeds should be hers, would have been inconsistent with their object, and was not necessary in order to give her an equitable claim on him for the value of the slaves, in accordance with his agreement, though, in the absence of any agreement, the statute might have protected him against any claim by her.
3. The fact that Maraman was dealt with and obtained credit upon the faith that the proceeds of the land and slaves belonged to him, does not, in our opinion, constitute a defense, so far, at least, as he and his representatives aré concerned. If it did, any person suing for money lent to another might, upon the same ground, be turned out of court.
4. Nor does the fact that part of the proceeds of the property was used in paying store accounts, contracted by Mrs. Maraman, and in purchasing a carriage for her, and by her direction, constitute a defense. In the absence of .evidence to the contrary, it must be assumed that the debts thus contracted were his debts, not hers, and that he was bound for them in the same way as for any other debt contracted by him. Whether he paid them with the money obtained by selling her property, or other money, is not material.
But., though Mrs. Maraman is equitably entitled to have the • notes of her husband paid out of his estate, shall this merely *91 equitable right be enforced at her instance to the prejudice of his creditors? The authority chiefly relied on by her counsel is this passage in Story’s Eq. Jur., sec. 1373 : “If a wife unite with her husband to pledge»her estate, or otherwise to raise a sum of money out of it, to pay his debts or to answer his necessities, whatever might be the mode adopted to carry that purpose into effect, the transaction would, in equity, be treated according to the true intent of the parties. She would be deemed a creditor, or a surety for him, for the sum so paid, and she would be entitled to reimbursement out of his estate . and to the like privileges as other creditors.” One of the cases cited by Judge Story in support of that doctrine is Tate vs. Austen, 1 P. Will., 264, in which a wife had joined her husband in a mortgage of her real estate to secure his debt, which he, by the deed, covenanted to pay to the mortgagee ; he died leaving a will, giving several legacies, and owing debts by simple contract, and it was held that his personal estate must be applied : 1. To the creditors by simple contract. 2. To the mortgage. 3 To the legacies. That case certainly does not maintain that the wife is entitled to the like privileges as other creditors, in a contest between her and them.” Neimcewitz vs. Gahn, (3 Paige, 614,) and the other cases cited • by Judge Story, do not, we belit ve, go farther than this: that if a wife, out of her separate estate, pays her husband’s debt, which is secured by a mortgage on his property, she is entitled as against other creditors to stand in the place of the mortgagee. The ground upon which those cases rest was thus stated by Chancellor Walworth: “No reason is given (in Tate vs. Austen,) for postponing the claim of the wile until after all other debts were paid. * * Lord Cowper probably considered the claim of the wife as a mere equitable claim against the estate of her husband, for which no suit at law could be brought against his representatives, without adverting to the fact that the covenant of the husband to pay the mortgage money was still an available security in the hands of the mortgagee, which would enable the latter to claim payment out of the real and personal assets of the husband, to the exclusion of the simple contract creditors, and that the wife, standing in the *92 situation 'of a surety, was entitléd to be substituted to the place of the mortgagee.” (3 Paige, 646.) Where, as in the ease before us,'the wife’s claim is a mere equity, and thére is'no legal démánd to which she can be'substituted, it would seem to follow that her claim cannot be enforced to the prejudice of her husband’s creditors. In Clinton vs. Hooper, (3 Bro. C. R., 201,) which is referred to by Mrs. Maraman’s counsel as being in point, the point decided was, that the wife, by certain declarations to her husband's'executor, had waived her right to an exoneration of her estate’out of the husband’s property ; but Lord Thurlow, in his opinion, apparently'sanctioned the decision in Tate vs. Austen, (3 Brown’s C. C., 200; 1 Ves. Jr., 173,) and we have seen no decision questioning the’doctrine of that case.'except so far as it rri’a-y be regarded as denying the wife's-right to be substituted to the legal'rights of'the creditor whose demand she pays.
There is no allegation nor proof of a fradulent combination between Mrs. Maraman and herhusband, to give him a fictitious credit; but her'petition shows that she placed the proceeds of her property in his hands to rélieve him from pecuniary embarrassment, and expecting to be paid by him when his circumstances should become better. The "natural tendency of her conduct was to give him credit with others, who knew nothing of the agreement between him ánd her. As she has come into equity for relief, sound policy seems to forbid that her claim, which has no legal validit}", shall be placed upon an equal footing with the legal demands of creditors. A different doctrine might open the door to many frauds. In our opinion this claim is not embraced by the statute which re-quir-s that, in the settlement of the estates of insolvent decedents, all debts and liabilities shall be of equal dignity and be paid ratably. The object of that statute was to deprive executors and administrators of the power, which thejT formerly possessed, to pay some debts in preference to others of'the same class, and to destroy the preference given by the common law to specialty over simple contract debts, and not to place upon an equal footing with such debts merely equitable *93 claims, which, before the statute, were not regarded as standing upon the footing of even simple contract debts.
The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.