CASE 98—PETITION EQUITY—JANUARY 29.

# Chorn v. Chorn's Administrator.

### APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. HOUSEHOLD FURNITURE GIVEN TO THE WIFE AS HER SEPARATE ESTATE, and held and claimed as such by her with the consent of the husband, may after his death be held by her as against his personal representative or heirs.

    In this case the creditors of the husband are not complaining, the controversy being between the widow and the heirs.

2. THE HUSBAND HAVING COLLECTED THE RENTS OF LAND HELD BY THE WIFE AS HER SEPARATE ESTATE, his estate is liable to her therefor, as he thereby converted himself into a trustee for her. The provision of the statute giving the husband the right to lease the wife's land for three years and receive the rents does not apply to land held by her as separate estate.

3. AN ORDER MAKING AN ALLOWANCE TO THE ATTORNEY FOR AN ADMINISTRATOR in a suit brought by him to settle the estate of his intestate, the allowance being for services rendered and to be rendered in the suit, was not a final judgment, and may, therefore, be reviewed upon this appeal granted more than two years after it was entered, the appeal having been granted within two years after the final judgment of distribution.

PHIL B. THOMPSON, Sr., FOR APPELLANTS.

1. The personal property claimed by and allowed to the widow was the property of the estate of James Chorn, and the widow should be compelled to account for it. (Craddock v. Riddlesberger, 2 Dana, 205; Penn v. Young, 10 Bush, 628; Moreland, &c., v. Myall, &c., 14 Bush, 475.)

2. The claim for rent of land should have been disallowed. If the wife had any separate estate, it was only 27 acres.

3. The attorneys were not entitled to an allowance to be paid out of the estate of James Chorn.

    The attorneys having undertaken to represent Mrs. Chorn individually in the assertion of her claim against the estate that employment was inconsistent with their employment by her as administratrix, and therefore they are not entitled to receive compensation from any source. (1 Wait's Practice, 243; King v. Shore Cro. Eliz., 914; Herrick v. Catley, 1 Daly (N. Y.) 512; s. c. 30 How., 208; Sherwood v. Saratoga, &c., R. Co., 15 Barb., 650;

Valentine v. Stewart, 15 Cal., 387; Goulden v. State, 11 Ga., 47; Commonwealth v. Gibbs, 4 Gray, 146; Price v. Grand Rapids, &c. R. Co., 18 Ind., 137.)

M. S. TYLER ON SAME SIDE.

1. The judgments of Dec. 15, 1890, and June 6, 1891, as to the claims of appellees were not "final orders" and therefore the plea of limitation should not prevail. (Vinson v. Freese, 8 Ky. Law Rep., 350; Adkisson v. Dent, 88 Ky., 628; Bank of Ky. v. Allen, 8 Ky. Law Rep., 36; Bondurant v. Apperson, 4 Met. 30; Brown v. Vancleave, 9 Ky. Law Rep., 593; Helm v. Short, 7 Bush, 623; Portwood v. Outon, &c., 1 B. Mon., 150.)

2. The proof of the claim of Mrs. Chorn is not sufficient. (Trabue's ex'or v. Harris, 1 Met., 600; Leach v. Kendall's adm'r, 13 Bush, 424.)

B. F. BUCKNER FOR APPELLEES.

1. The rents resulting from the lease of the wife's separate estate were also her separate estate, and the husband became her debtor for their amount when received and appropriated by him. (Bishop on Rights of Married Women, secs., 190, 818.)

2. The law converted the husband into a trustee for the wife as to the proceeds of logs cut from her separate estate, which were received by him. (Thomas v. Harkness, 13 Bush, 21; Campbell v. Galbraith, 12 Bush, 459.)

3. The allowance to O'Rear & Bigstaff as attorneys was not excessive.

4. The personal property allowed to the widow was her separate estate.

5. The judgments of Dec. 15, 1890, and June 6, 1891, were final, and therefore the appeal as to them is barred by limitation. (Forgay v. Conrad, 6 How., 201; Dean v. Nelson, 7 Wall, 342; Winthrop Iron Co. v. Meeker, 109 U. S., 180; Moore v. Simpson, 5 Litt., 52; Banton v. Campbell, 2 Dana, 421; Whiting v. Bank of United States, 13 Pet., 6; Maysville, &c., R. Co. v. Punnett, 15 B. M., 48; Turner v. Browder, 18 B. M., 826; Megowan v. Pennebaker, 3 Met., 502; Rice v. Danville Turnpike Co., 7 Dana, 85; May v. Hardin, 13 B. M., 344; Helm v. Short, 7 Bush, 625; Dawson v. Litsey, 10 Bush, 411; Scott v. Kennedy, 12 B, M., 515; Harrison v. Lebanon Water Works, 91 Ky., 255; Beatty v. Beatty, 10 Ky. Law Rep., 72.)

O'REAR & BIGSTAFF ON SAME SIDE.

1. The personal property in question was the separate estate of the wife. (Maraman's Adm'r v. Maraman, 4 Met. 85; Thomas v.

Harkness, 13 Bush, 23; Jones v. Nesbitt, 12 Ky. Law Rep., 796; Walton v. Broaddus, 6 Bush, 328; McClannahan v. Beasley, 17 B. M., 111; Tindslay v. Roll, 2 Met., 509; Brown v. Abden, 14 B. M., 141.)

2. The wife also had a separate estate in the land. No particular form of words is necessary to create a separate estate. (Walton v. Broaddus, 6 Bush, 328; Gen. Stats., chap. 52, art. 4, sec. 17; Young and wife v. Smith, 9 Bush, 421.)

3. The court properly allowed the widow's claim for rent of her separate estate. (Carter v. Carter, 2 Bush, 288; Campbell v. Galbraith, 12 Bush, 459; Cotton v. Brown, 3 Ky. Law Rep., 679; Ware v. Richardson, 56 Am. Dec., 762; 2 Bouvier's Inst., 139 and note (c); *Idem*, 208, sec. 1676.)

4. The widow was entitled to the proceeds of logs cut from her Bourbon county land. (Moreland v. Myall, 14 Bush, 474; Craddock v. Riddlesberger, 2 Dana, 206; Young v. Stump, 7 Ky. Law Rep., 1597.)

5. The allowance to O'Rear & Bigstaff was proper. (Blackstone's Comm., vol. 1, book 2, chap. 32, pp. 509, 509; *Idem*, vol. 2, chap. 2, p. 18; Schouler's Executors and Administrators, sec. 544, p. 674; *Idem*, sec. 389, p. 464; *Idem*, sec. 417, p. 508; Rogers on Expert Testimony, sec. 159, p. 220; *Idem*, sec. 104, p. 140.)

**CHIEF JUSTICE PRYOR** DELIVERED THE OPINION OF THE COURT.

James Chorn died in the county of Montgomery, in the month of August, of the year 1888. He left no children, but his widow, Mary W. Chorn, survived him and qualified as his personal representative. She instituted an action in the Montgomery Circuit Court for a settlement of his estate, and, during the progress of that litigation, many claims were presented by his creditors for payment, and some of them, being contested below, are now the subjects of this appeal.

His heirs at law, consisting of a brother and sister and the children of a brother and sister deceased, were defendants to the action below and are the appellants in this court.

The decedent owned a large and valuable estate, but seems to have been much indebted, and, after satisfying the

claims of creditors, there is but little, if anything, left for the heirs at law.

We will not consider all the exceptions filed to the claims presented, as many of the grounds of exception did not exist, and the claims were properly allowed, and will only take up such exceptions as, if improperly overruled, must affect, materially, the rights of those who are entitled as heirs at law.

The widow was allowed as a credit in her settlement the sum of near $6,000, being the amount of two notes her husband owed the National Valley Bank of Staunton, Virginia; and the objection made to this credit is that her husband borrowed this money for the Traders Deposit Bank, of Mt. Sterling, and being the bank's debt, as personal representative she ought not to have paid this money. There is no evidence that this was the bank's debt or that the widow had any reason to believe it was other than her husband's individual liability.

The decedent had pledged as collateral to secure the payment of this borrowed money one hundred and fifty shares of the stock of the Traders Deposit Bank that belonged to him, and it was the duty of the widow, as his personal representative, to pay off the debt to the Virginia bank and take up the collateral for the estate. This she did, and, besides, the evidence is conclusive that the debt for which the collateral was pledged was not the debt of the Mt. Sterling bank, but that of the decedent.

The widow was also allowed various articles of personal property, such as household furniture, including a piano, some of which she proves was purchased out of her own means, and other articles given to her and held and claimed as her separate estate during the life of the husband. They consisted of a mirror, an old set of parlor furniture, an old

piano, given her by her husband on her twenty-eighth birth-day, and some silverware given to her by her mother, with her maiden name upon it.  Several witnesses state that this household property, given by the father and mother of Mrs. Chorn, was given as her separate estate, and her husband (now deceased) recognized it as such.  Some of the personalty the wife purchased and paid for by checks on her own bank account, and we perceive no reason why the husband could not, by gift, create this separate estate, so that, as between himself and wife, she could hold it against his per-sonal representative or his heirs at law.  The creditors of the estate are making no complaint, but the controversy is between the widow and the heirs at law of the husband, the latter denying the right of the husband and wife to create a separate estate in this manner.

This court held, in Jones v. Nisbet, 12 Ky. Law Rep., 796, that where the wife, after marriage, claimed the piano as her separate estate (that she held before marriage), under an agreement with her husband, the title was in the wife, and the officer had no right to sell it for the husband's debt. (Thomas v. Harkness, 13 Bush. 23; Maraman's adm'r v. Mar-aman, 4 Met., 84.)

The claim of the wife to this property was properly sus-tained.

The wife owned jointly with the husband a tract of two hundred and four acres of land in Bourbon county.  The one-half of this tract was conveyed to the wife for and dur-ing her life "*as her separate estate, free from the disposal and control of her present husband * * it being for her own use as her separate estate.*"

The husband controlled this estate for several years, rent-ed the land out and collected the rents, the one-half of which, after deducting taxes and repairs, belonged to the wife; also

sold a number of walnut logs from the place. He held it as
her separate estate, and, unlike the income from the rent
of the general estate in land of the wife, could not be con-
verted to the use of the husband, so as to deprive the wife
of her interest in it.

In Carter v. Carter, 2 Bush, 288, this court said: "Section
1 of article 2, chapter 47 of Revised Statutes, conceding to
the husband the use of the wife's land with power to lease
it for three years, and to receive the rents, does not apply
to land held by a trustee for the 'sole and separate use' of
the wife."

The husband, by collecting these rents, converted himself
into a trustee for the wife, and, if living, would not be heard
to say, in a litigation with the wife, that he had used the
rents for his own purposes. The heirs at law of the hus-
band occupy no better position than the husband would if
living, and the facts showing that he collected these rents,
his estate must account to the wife, and the court will not
assume, without proof, that these rents were paid to the
wife or invested in some way for her use.

If creditors were complaining there would be more reason
for subordinating the wife's claim to their demands, but,
even as against creditors, the chancellor would not disre-
gard such a meritorious claim, and, in overruling the excep-
tions to this claim, we perceive no error.

The heirs also complain of an allowance to O'Rear & Big-
staff of $1,800 for their services as attorneys for the admin-
istratrix, and to this branch of the case it is insisted the ap-
peal is barred. The allowance to O'Rear & Bigstaff, as at-
torneys, was made more than two years before the appeal
was taken, as a preferred claim, and the administratrix di-
rected to pay it; but it is contended, and the facts sustain
this view, that this allowance was for services rendered and

to be rendered in an *ex parte* proceeding that could not well be said was a final judgment, such as precluded the chancellor from any further control over it after the expiration of the term at which the allowance was made.

It is often difficult to determine what constitutes a final judgment, and, particularly, in actions for the settlement of the estates of deceased persons.

The report of the settlement in which the accounts of the attorneys, O'Rear & Bigstaff and Brooks & Woodford, were allowed, had been confirmed, and, as to the first named attorneys, an order to pay the money had been made, and the land of the decedent directed to be sold to pay creditors, but no order of distribution had been entered; but, on the contrary, subsequent references had been made and other claims allowed; and if such steps in behalf of creditors, in the settlement of decedent's estates and that class of litigation, are to be regarded as final, it would result in the personal representative being compelled, in every protracted litigation for the settlement of an estate, to appeal from every allowance made to which his exceptions had been overruled. The rule showing the distinction between a final and an interlocutory decree is well expressed in Forgay v. Conrad, 6 Howard, 201, the court saying that when the decree decides the right to the property in contest and directs it to be delivered up, or directs the defendant to pay a certain sum of money, and the party is entitled to carry his decree into immediate execution, it must be regarded as final and authorizes an appeal, although so much of the bill is retained in the court as is necessary for the purpose of adjusting, by a further decree, the accounts between the parties, pursuant to the decree passed.          (Banton v. Campbell, 2 Dana, 421.)

This rule, however, should not apply to a mere interlocu-

tory order directing payment to an attorney for the parties, when it is plain, from the record, that such was not the purpose of the chancellor, and in fact a payment or partial payment for services to be rendered.

In Bondurant v. Apperson, 4 Met., 30, it is said: "A judgment to be final must not only decide that one of the parties is entitled to relief of a final character, but must give that relief of its own force, or be enforceable for that purpose, without further action by the court or by process of contempt;" and it may be said, in this case, that, although the personal representative might have been proceeded against for contempt in not paying the money to O'Rear & Bigstaff, still the court could have withheld the process on the ground that the order was merely interlocutory and the service had not been performed.

Judgments for the sale of land, in the settlement of estates, are for the purposes of distribution, and reference after reference is often made to the commissioner for proof of claims, and a like judgment rendered to sell other land or more of the same land to pay debts, and it has never been held that the statute begins to run from the judgment to sell for creditors, or from the time the allowance is made of the creditor's claim; and, if such was the rule, there must, necessarily, be appeal after appeal in every case of settlement for general distribution.

It is unlike the sale of land to pay a particular debt or a judgment requiring one to pay to the other or to deliver property to the claimant, or the confirmation of a sale under a decree that, upon confirmation, vests the title in the purchaser. The power to audit, settle and adjust the accounts remains up to the order of distribution. (Adkisson v. Dent, 88 Ky., 628.)

The claims of these attorneys, however, are sustained by

the testimony, both as to the amount and character of the services rendered.

There are other exceptions, one as to the amount the widow charges herself with in the settlement, which is $3,800, or about tnat sum, and the claims of wards, for whom her husband acted as guardian, all of which claims are proven, and to which the widow was entitled as a credit.

The exceptions made have been all considered, and we perceive no necessity in returning this case for further settlement, as it is as near accurate as could well be made.

Judgment affirmed,