Arthur A. Marer and Company, Appellant, v. Estate of M. J. Wolford, Deceased, et al., Appellees.

Gen. No. 8,769.

Opinion filed January 12, 1934.

HUTTON & CLARK, for appellant.

J. C. WOODBURY, GUNN, PENWELL & LINDLEY and ACTON, ACTON & BALDWIN, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an appeal from a judgment of the circuit court in favor of appellees on a claim originally filed in the probate court of Vermilion county against the estate of M. J. Wolford, deceased.

M. J. Wolford, a resident of Danville, died testate on May 28, 1928, naming the Palmer National Bank, a corporation, Charles F. Shane and Roscoe S. Fairchild as executors of his will.

On June 3, 1929, Arthur A. Marer & Company, a corporation, filed its claim against the estate of said M. J. Wolford, deceased, in the probate court of Vermilion county in the sum of $127,400.

Claimant alleged that on the 15th day of December, 1926, it entered into a certain contract with the Danville Hotel Company, an Illinois corporation, by the terms of which claimant agreed to furnish and equip a certain hotel of the Danville Hotel Company, to wit: The Hotel Wolford, with all the necessary household and hotel equipment, furniture, carpets, etc., a copy of which contract with a list of items and prices thereof is attached and made a part of said claim, and marked Exhibit A.

It further alleged that on the 24th day of November, 1926, the deceased, M. J. Wolford, together with one John H. Harrison, entered into a certain written contract guaranteeing the payment of and for said hotel furniture and equipment, a copy of which contract is attached to said claim and made a part thereof, and marked Exhibit B.

That it had fully and faithfully performed all of the terms of said contract (Exhibit A), by the terms thereof required by it to be performed, and that the prices therein set forth were the fair and reasonable charges agreed to in said contract.

That, on or about September 1, 1927, it completed the furnishing of said hotel with the furniture and carpets, as specified in said contract, and that the sum of $26,600 was paid thereon, in cash, leaving a balance of $127,400 due and unpaid.

Claimant further alleged that the contract, referred to in paragraph 1 of said claim, being "Exhibit A,"

was entered into with the knowledge and consent of M. J. Wolford, deceased, and that he was, at the time of the execution of said agreement, a director of said Danville Hotel Company, a corporation; that at said time the only assets of said corporation were the lot on which said Hotel Wolford was being erected, worth not more than $40,000, and about $45,000 paid in capital stock; that the said M. J. Wolford, being then and there a director of said corporation, assented to this indebtedness of the claimant in excess of the amount of its capital and, by virtue of the statute in such case made and provided, became personally liable for such excess, and that his estate is liable and obligated to pay such excess.

Claimant further alleged that said Danville Hotel Company, a corporation, was insolvent, was adjudicated a bankrupt on August 19, 1927; that the amount due the claimant herein, $127,400, has not been paid by said hotel company or any person or persons for it; wherefore, claimant alleged that M. J. Wolford became liable to pay claimant the sum of $127,400 with interest thereon at five per cent from the first day of September, 1927.

Said Exhibit A, attached to said claim, was a contract made and entered into on the 15th day of December, 1926, by and between the Danville Hotel Company, a corporation, and known in said contract as the Hotel Company, and Arthur A. Marer & Company, a corporation, known in said contract as the Furniture Company, the terms of which were substantially as follows:

Whereas, the Hotel Company is in the business of constructing, erecting and conducting hotels, and has recently erected in the City of Danville a hotel, known as the Hotel Wolford, which hotel is about completed and ready to be equipped; and whereas, the Furniture Company is in the business of dealing in and with, as wholesalers, jobbers and manufacturers of furniture, household and hotel equipment; and whereas, it is the

desire of the Hotel Company to have said Furniture Company furnish and equip said Hotel Wolford with all of the necessary household and hotel equipment, in accordance with the list of furnishings attached hereto, and marked "Exhibit A," and made a part hereof; and whereas, it is the desire of the Furniture Company to sell to the Hotel Company all of said equipment and furnishings in accordance with the prices therein specified.

Therefore, for and in consideration of $24,000, in hand paid, and the execution and delivery of 18 promissory notes, 17 of which said notes being each for the sum of $2,600, due consecutively every 30 days after December 15, 1926, and one note for $85,800 due 18 months after December 15, 1926, and the execution of a trust deed to secure the payment of said notes.

It was agreed as follows:

First. That the Hotel Company agrees to purchase from the Furniture Company, and the Furniture Company agrees to sell to the Hotel Company and install in said Hotel Wolford all of the furnishings and equipment set forth in said "Exhibit A."

Second. The Furniture Company agrees to start immediately with the installation of such furniture, carpets and equipments set forth in "Exhibit A," and to have the installation thereof substantially completed within 30 days, and entirely completed on or about the first day of February, 1927. Said "Exhibit A," referred to in said contract, contained a list of the furnishings with the prices thereof.

"Exhibit B," referred to and made a part of said claim, was an agreement made and entered into on the 24th day of November, 1926, by and between John H. Harrison and M. J. Wolford, of Danville, parties of the first part, and Caldwell & Company, a Tennessee corporation, parties of the second part, and is in part as follows:

Whereas, John H. Harrison is president of the Danville Hotel Company and M. J. Wolford is treasurer and interested in said Danville Hotel Company, which is now erecting and preparing to furnish the Hotel Wolford at Danville; and whereas, the said Danville Hotel Company entered into an agreement with the party of the second part to underwrite and dispose of its 1033 bonds, aggregating $700,000, in total principal amount, dated March 1, 1926, and secured by a mortgage or trust deed upon the hotel property, and a chattel mortgage upon the furnishings; and whereas, said mortgage or trust deed, among other things, provided:

"Said owner further covenants and agrees that it will promptly furnish all moneys necessary in addition to, and prior to the use of the proceeds of this bond issue, to complete and furnish the Hotel Wolford, now being erected upon said property, in accordance with the plans and specifications heretofore made by Hall, Lawrence Rippel & Ratcliffe, architects, and that it will have the same promptly completed and furnished, without interruption or delay in the work, and, immediately upon completion, that it will commence, or have commenced, the operation of said hotel."

And whereas, the said Danville Hotel Company has on hand moneys estimated as sufficient, in addition to the proceeds of the bonds, to complete the hotel building but has not now on hand moneys sufficient to furnish the hotel; and whereas, the said underwriter, under the terms of the underwriting agreement, of date February 13, 1926, which is hereby referred to and made a part hereof as fully as though set forth verbatim herein, is the custodian of the proceeds of said bond issue, and is advised that it should not further make disbursement of said proceeds on the erection of said hotel, unless, and until the Danville Hotel Company has in hand sufficient moneys to furnish the hotel building or assurance is given that the furnishings will

be absolutely installed, free of lien; and whereas, the parties of the first part acquiesce in the correctness of that advice, and are willing to guarantee the installation of said furnishings.

Now, therefore, it is agreed that the parties of the first part do hereby guarantee the installation in the Hotel Wolford on or before December 15, 1926, by Arthur A. Marer & Company, of Chicago, of the furniture, of the prices or value of $115,000, mentioned in contract of date October 9, 1926, and exhibit thereto, which written contract and exhibit are hereby referred to and made a part hereof, agreeing, if the Hotel Company does not promptly pay, to pay for said Hotel Company all of the payments therein required to be made before installation is completed, when said payments are due.

A hearing was had on said claim in the probate court and, on May 28, 1932, judgment was entered against said estate for the sum of $80,599, to be paid in due course of administration, from which judgment an appeal was perfected to the circuit court of Vermilion county.

At the January term, 1933, of the circuit court of Vermilion county and on, to wit, January 16, 1933, a jury was waived and the cause was submitted to the court for trial; and after the court had heard the evidence on behalf of claimant it was discovered that M. J. Wolford was not a director of the company when the contract with appellant was made, and it was granted leave to file an amendment to its claim.

By which amendment to said claim it alleged that a copy of said document, referred to in said contract dated November 24, 1926, as a contract of October 9, 1926, is hereto attached and made a part hereof, and marked ''Exhibit C''; that a copy of the exhibit to said contract dated October 9, 1926, mentioning furniture, carpeting and equipment referred to therein, is at-

tached and made a part hereof, and marked ''Exhibit D''; that a copy of the deed of trust, mentioned in said contract dated November 24, 1926, is the exhibit hereto attached and made a part hereof, and marked ''Exhibit E''; and that a copy of a chattel mortgage, mentioned in the contract dated November 24, 1926, is hereto attached and made a part hereof, and marked ''Exhibit F''; and that a copy of a certain underwriting agreement of date February 13, 1926, referred to in said contract dated November 24, 1926, is hereto attached and made a part hereof, and marked ''Exhibit G.''

Claimant further alleged that it did install in and furnish to said Hotel Wolford all of the carpeting, equipment and furniture mentioned in said contract dated November 24, 1926, therein by it required to be installed and furnished with the exception of the carpeting and ozite for, to wit, 11 rooms of said hotel; claimant further averred that, after the execution of said contract dated November 24, 1926, by the mutual acquiescence, agreement and understanding of all the parties thereto and of the Danville Hotel Company, owner of said Hotel Wolford, the quality of said furniture, equipment and carpeting so required to be furnished and installed, and so mentioned and listed, was increased and additions to same in quantity were made, whereby a total agreed purchase price therefor, between claimant and said Danville Hotel Company, was increased from $115,000 to $154,000, including ozite and carpeting to be installed in such certain 11 rooms aforesaid; and that, with the consent, acquiescence and agreement of said Danville Hotel Company and of the parties to said certain contract dated November 24, 1926, said carpeting, equipment and furniture so mentioned in said contract of October 9, 1926, and the exhibit thereto, as so increased in quality, quantity and agreed purchase price, with the exception of such ozite and carpeting for said certain 11 rooms,

was, as aforesaid, by claimant so installed and furnished into said hotel, to wit, between December 15, 1926, and March 1, 1927.

Claimant further alleged that said 11 rooms of said hotel were not installed, furnished and equipped with carpeting up to the date that said Danville Hotel Company became a bankrupt, and that upon said last date of bankruptcy, and thereby, that all payments agreed by said Danville Hotel Company to be paid claimant for said furniture and equipment so installed, and so not installed but by claimant offered to be installed, became due and payable.

Claimant further averred that upon said date of bankruptcy, by virtue of a provision of the contract dated November 24, 1926, said M. J. Wolford, deceased, became liable to pay claimant all of said payments which had so become due and not been paid to claimant, together with interest thereon at seven per cent.

Claimant further alleged that the changes in quality, quantity and purchase price of said carpeting and furniture, and the execution of said contract dated December 15, 1926, each were well known to, acquiesced in and agreed to by said decedent, M. J. Wolford; and that by said changes in quality, quantity and total purchase price, he, the said M. J. Wolford, did not intend thereby to be relieved from his obligation, and was not relieved from his said obligation to claimant to pay claimant for all of the payments that might be due claimant from said Danville Hotel Company, if said Danville Hotel Company did not pay same, when due, for all of such carpeting, equipment and furniture, and additions, so purchased from claimant and installed and attempted to be installed by claimant into said hotel, as above set forth.

Claimant further averred that on December 11 and December 15, 1926, to induce claimant to enter into, execute and sign the contract with said Danville Hotel

Company to sell said Danville Hotel Company and to agree to install and furnish into said hotel the said carpeting, equipment and furniture which claimant did install into said hotel, said M. J. Wolford, before the entering into said contract dated December 15, 1926, did advise and state to claimant and to an attorney of claimant that said contract dated November 24, 1926, had been signed and executed by said M. J. Wolford and said John H. Harrison; that a copy of the wording of the same was not accessible to be seen by claimant and its said attorney because the same was in the State of Tennessee then, and did advise and state to claimant and to said attorney for claimant that said contract dated November 24, 1926, was a contract which, by its terms and conditions, obligated said decedent and said John H. Harrison to pay claimant for all of the carpeting, furniture and equipment then contemplated to be furnished and installed in said hotel by claimant, without reservation that such contract of date November 24 had any limitation as to being an obligation to pay certain payments until installation was completed; that claimant and its said attorney did not know that said contract dated November 24, 1926, did contain any conditional terms of guarantee of payment for any limited number of payments; that claimant then and there believed that same was an absolute obligation to pay claimant any and all of the purchase price for said carpeting, equipment and furniture up to the amount of $154,000, should it not be paid by said Danville Hotel Company for the same; that relying upon the truth of such statements of said M. J. Wolford and induced thereby, the claimant did, on December 15, 1926, enter into said contract, bearing said last mentioned date, shown in the exhibit hereto attached, with said Danville Hotel Company, and did sell to said Danville Hotel Company, install and furnish into said hotel, the carpeting, equipment and furniture as above

set forth, and did offer to furnish said,.to wit, 11 rooms as above set forth.

Claimant averred that because of said statements and inducements of said M. J. Wolford, upon the reliance of the truth of which claimant did agree to and did sell, furnish and install in said hotel said carpeting, equipment and furniture therein, as aforesaid, and did offer to install said carpeting in said, to wit, 11 rooms aforesaid; that, because of said statements and inducements of said M. J. Wolford, the said M. J. Wolford, in his lifetime, became and was, and the estate of said M. J. Wolford, deceased, at his death became and is now estopped to deny liability to pay claimant the balance, including accrued interest at seven per cent of the amount owing by said Danville Hotel Company to claimant for the purchase from it of such furniture, carpeting and equipment as above set forth.

Claimant further amended said original claim, filed June 3, 1929, by striking out the fifth paragraph of said claim, and which said fifth paragraph, so stricken out, is, as follows:

"Claimant further alleges that the contract hereinbefore referred to, in paragraph 1 hereof, was entered into with the knowledge and consent of M. J. Wolford, deceased, that he was, at the time of the execution of said agreement, a director of said Danville Hotel Company, a corporation; that at said time the only assets of said corporation were the lot, on which said Hotel Wolford was being erected, worth not more than $40,000.00 and about $45,000.00 paid in capital stock; that the said M. J. Wolford, being then and there a director of said corporation, assented to this indebtedness of the claimant in excess of the amount of its capital stock and, by virtue of the statute in such case made and provided, became personally liable for such excess, and that his estate is liable and obligated to pay such excess."

The contract of date October 9, 1926, and attached to and made a part of the amended claim and marked "Exhibit C," and being the contract referred to in "Exhibit B," attached to the claim as originally filed and made a part thereof, was one that was prepared to be executed by the Danville Hotel Company on the one part and Arthur A. Marer & Company on the other part, but was never in fact executed by the parties.

By the terms of this unexecuted contract the Danville Hotel Company agreed to purchase from Arthur A. Marer & Company certain furnishings and equipment for an agreed price of approximately $115,000, to be paid for as specified in said contract.

After said amendment to said claim was filed, a further hearing was had and further testimony taken, and thereupon the court refused to allow said claim and entered judgment in bar of said action, from which judgment of the circuit court appellant perfected this appeal.

The claim, as originally filed in the probate court, was based solely upon Wolford's liability as a director of the Danville Hotel Company, and being an action to recover for a violation of the provisions of section 23 of the General Corporation Act then in force, Cahill's St. 1931, ch. 32, ¶ 23, the claim being that the Danville Hotel Company, a corporation, entered into the contract of date December 15, 1926, which provided for the expenditure of $154,000, with the knowledge and consent of M. J. Wolford, deceased, while he was a director of said corporation, and that at said time the only assets of said corporation were the lot on which the Hotel Wolford was being erected, worth no more than $40,000, about $45,000 paid in capital stock, and that M. J. Wolford, being a director of said corporation, assented to said indebtedness of the claimant in excess of the amount of the capital of said corporation and by virtue of the statute he became personally liable

for such excess and that his estate is liable and obligated to pay such excess.

Section 23 of the General Corporation Act, in force in 1926 (Session Laws, 1919, p. 321) Cahill's St. 1931, ch. 32, ¶ 23, provided:

The directors shall jointly and severally be liable for the debts and contracts of the corporation in the following cases:

(1) For assenting to an indebtedness in excess of the amount of the capital of the corporation, to the amount of such excess.

Wolford was not a director of said corporation, therefore no claim creating any legal liability was filed in the probate court, and, even if he had been a director, his liability under said act abated at his death.

Acts such as this have been construed as creating penalties and no action can be sustained for the collection of the penalty after the death of the tortfeasor. *Cairo Meal & Cake Co. v. Estate of Brigham,* 268 Ill. App. 510.

It has also been held that the sole remedy for enforcing the statutory liability of directors assenting to corporate debts in excess of the capital of the corporation must be in equity and not at law, because only in equity can all the different creditors and others interested be brought before the court. *Albert Pick & Co. v. Warshauer,* 244 Ill. App. 56; *Cairo Meal & Cake Co. v. Estate of Brigham,* 268 Ill. App. 510.

Therefore, it appears that no claim was ever filed in the probate court of which that court could take cognizance.

The original claim having been amended in the circuit court by striking out the fifth paragraph thereof, charging that M. J. Wolford was a director of said Danville Hotel Company, a corporation, at the time of the execution of the contract "Exhibit A," attached to said claim, and that the same was entered into with

his knowledge and consent and that he assented to this indebtedness of the claimant in excess of the amount of the capital of said corporation (and being the sole cause of action upon which claimant relied in its original claim).

And also by alleging the making of the contract of date December 15, 1926, and by further alleging that, in order to induce the claimant to enter into said contract, said M. J. Wolford advised and stated to claimant and to an attorney, before the execution of said contract, that the contract of date November 24, 1926, had been signed by himself and one John H. Harrison, a copy of the wording of which was not accessible to be seen by claimant because the same was in the State of Tennessee, but that the contract by its terms and conditions obligated said Wolford and Harrison to pay claimant for all of the carpeting, furniture and equipment contemplated to be purchased and installed in said hotel, and that claimant believed that the same was an obligation to pay the purchase price of $154,000 should the Danville Hotel Company not pay for the same.

And by further alleging that, because of said statements of said M. J. Wolford and upon the reliance of the truth of which, claimant sold and furnished and installed said carpeting, furniture and equipment and that M. J. Wolford in his lifetime became and was and his estate, at his death, became and is estopped to deny liability to pay the balance due on said claim, raised a new cause of action and sought to recover upon the doctrine of estoppel.

The probate court under our constitution is the court having original jurisdiction of the settlement of estates, and when appeals are taken from it to the circuit court, that court exercises appellate jurisdiction, and, acting as an appellate court, it can entertain no matter not before the probate court. *Elder v. Whittemore,* 51 Ill. App. 662.

The trial in the circuit court was a trial *de novo,* and while that court had power to permit appellant to file an amended claim, yet such amended claim could not raise a new cause of action not presented to or passed upon by the probate court, the only court in which, under the statute, claims against decedents must be filed. Sec. 60, Cahill's St. ch. 3, ¶ 61; *Cairo Meal & Cake Co. v. Estate of Brigham,* 268 Ill. App. 510.

The circuit court did not have jurisdiction to entertain, on appeal, this new and original action.

The judgment is, therefore, reversed and the cause remanded to the circuit court with directions to dismiss the claim at the cost of appellant.

*Reversed and remanded with directions.*