In re Estate of Harry Schwartz, Deceased. Anna Parmet et al., Appellants, v. William L. O'Connell, Appellee.

Gen. No. 38,584.

Opinion filed July 3, 1936.,

SANDERS, CHILDS, BOBB & WESCOTT, of Chicago, for appellants; W. L. BOURLAND and F. M. HARTMAN, both of Chicago, of counsel.

SIMS & STRANSKY, of Chicago, for appellee; FRANKLIN J. STRANSKY and EDWARD J. McLAUGHLIN, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Anna Parmet, formerly Anna Schwartz, and Rose Schwartz as guardian of Delmore and Kenneth Schwartz, minors and legatees under the will of Harry Schwartz, deceased, filed in the probate court objections to a certain item in the executor's first current account showing payment of $20,413.27 by the executor to the brokerage house of John F. Clarke & Company as the purchase price of securities which the brokers had held for deceased during his lifetime. The probate court having sustained the objections, the executor perfected an appeal from the ruling to the circuit court, where the matter was tried *de novo* and judgment entered in favor of the executor, overruling the objections. Anna Parmet and Rose Schwartz, hereinafter referred to as the objectors, have prosecuted this appeal.

The facts, so far as they are essential to a consideration of the issues involved, disclose that May 30, 1930, deceased, Harry Schwartz, had a brokerage account with Eastman Dillon & Company, who held as collateral security for his account 500 shares of Paramount Publix Corporation stock and 200 shares of the United Corporation stock. May 19th of that year Schwartz owed

on his brokerage account with Eastman Dillon & Company $21,272.08. On that date (May 19, 1930) he directed John F. Clarke & Company, another brokerage house, to pay his debit balance with Eastman Dillon & Company and to receive for his account the aforesaid securities. In compliance with this request, John F. Clarke & Company, on May 22, 1930, paid to Eastman Dillon & Company the debit balance then due, and received from the latter, for the account of Schwartz, the securities hereinbefore mentioned. Later Schwartz received credit on the $21,272.08 for certain credits not shown of record, so that on October 30, 1930, after his death, the balance which remained due amounted to $20,413.17. Schwartz died June 7, 1930, leaving a last will and testament which was admitted to probate, and contained, among other provisions, the following: *"First:* I desire my executors hereinafter named first to pay all my just debts, funeral expenses and medical expenses.*"

The Chicago Trust Company duly qualified as executor July 29, 1930, and October 30, 1930, paid to John F. Clarke & Company out of the funds of the estate the balance remaining due on the moneys theretofore advanced by John F. Clarke & Company to Eastman Dillon & Company, amounting to $20,413.27, and received the stock of Paramount Publix Corporation and United Corporation, which then had a market value in excess of $30,000. Some time thereafter the Central Trust Company was appointed successor executor of the will of Harry Schwartz, deceased, and took over the securities. January 31, 1932, Central Trust Company filed its first current account as executor, covering the period from June 8, 1930, to January 31, 1932, wherein it listed the 500 shares of Paramount Publix Corporation and 200 shares of the United Corporation stock, and set forth payment as of October 30, 1930, of the sum of $20,413.27 to John F. Clarke & Company. Anna

Schwartz, widow of deceased, and Rose Schwartz as guardian of Kenneth Schwartz, a minor, and formerly as guardian of Delmore Schwartz, now of age, filed the following as their sole and only objection to this item:

"The executor completed a contract made in the lifetime of the deceased for the purchase of 500 shares of Paramount Publix Corporation common stock and 200 shares of the United Corporation common stock by the payment of $20,413.27 to John F. Clarke & Company, .without authority to do so under the will, and without securing the direction and order of this court, whereby the estate has suffered great loss . . . ." This objection was sustained by the probate court, whereupon an appeal followed to the circuit court. July 15, 1935, William L. O'Connell, receiver of the Central Republic Trust Company, was by order of the circuit court substituted for the Central Republic Trust Company.

In both the probate and circuit courts the cause was presented, tried and argued on the basis of the single issue, whether the payment of $20,413.27 made by Chicago Trust Company out of the funds of the estate to John F. Clarke & Company constituted the unauthorized completion of an executory contract made in the lifetime of the deceased for the purchase. of the securities in question, or whether the transaction constituted the payment of a debt created by Schwartz during his lifetime which the executor had the right and authority under the will to pay without first securing the direction and order of the probate court.

When the parties had concluded their arguments in the circuit court the matter was taken under advisement and on July 9, 1935, the trial judge announced his decision and held that the act of Chicago Trust Company in paying to John F. Clarke & Company the sum of $20,413.27 did not constitute the completion of an executory contract of deceased, but was the payment of an unconditional debt or obligation of the deceased

which the executor had the right to pay under the direction of the testator's will, without any specific order of the probate court. Thereupon counsel for the objectors for the first time asked leave to file an objection to the executor's report not theretofore made in the probate court or in the circuit court, setting up negligence of the Central Republic Bank & Trust Company in failing "to sell, within a reasonable period of time, the 500 shares of Paramount Publix Corporation common stock and the 200 shares of United Corporation common stock above mentioned." The executor's counsel objected to the additional issue of negligence being raised after the hearing was concluded, and insisted that the trial court limit the issue raised by the objections filed in the probate court. The objection was sustained, and the motion to file an additional objection was denied.

As to the two major grounds urged for reversal, it is first contended that the circuit court erred in refusing to permit the additional objection to be filed. As a basis for this contention it is argued that on appeal from the probate court to the circuit court the cause is tried *de novo,* and the appeal brings up the whole matter for trial. Several cases are cited to support the objectors' position, including *Barnes v. Earle,* 275 Ill. 381; *Snyder v. Snyder,* 142 Ill. 60; *McMahan v. Trautvetter,* 305 Ill. 395; and *Scanlan v. Kirby,* 230 Ill. App. 505. We have examined these citations. They do not sustain counsels' position, but merely hold that on a trial *de novo* the circuit court stands in the shoes of the probate court and is clothed with the same powers as the probate court. In the instant proceeding the objectors allowed the cause to be tried in both the probate and circuit courts on the single issue before mentioned, and after the trial judge in the circuit court had given the matter his deliberate consideration and determined the sole issue presented to him adversely to objectors, they sought to inject a new and additional

issue into the proceeding by means of the amendment. We think the court ruled correctly in refusing to permit the objectors to try the new issue after the court had announced its decision. In *Cairo Meal & Cake Co. v. Brigham,* 268 Ill. App. 510, it was held that although the trial in the circuit court on appeal from the probate court is a trial *de novo,* and the circuit court has power to permit a claimant to file an amended claim (citing the case of *Johnson v. Kilpatrick,* 250 Ill. App. 416), "yet such amended claim may not raise a new cause of action not presented to or passed upon by the probate court. (*Elder v. Whittemore,* 51 Ill. App. 662; *Millard v. Harris,* 119 Ill. 185.) If this were not so, a claimant might file in the probate court a baseless claim and then on appeal try, in the circuit court, issues and claims not presented to the probate court, the only court in which, under the statute, claims against decedents must be filed."

In *Marer & Co. v. Estate of M. J. Wolford,* 273 Ill. App. 305, a claim was filed against an estate based upon the decedent's liability as director of a corporation. In the circuit court the original claim was amended by striking out that portion of the claim which alleged that deceased was a director, and setting up a different theory for recovery. The Appellate Court reversed and remanded the cause, and in holding that the circuit court did not have jurisdiction to entertain, on appeal, the new cause of action, said (pp. 317, 318):

"The probate court under our constitution is the court having original jurisdiction of the settlement of estates, and when appeals are taken from it to the circuit court, that court exercises appellate jurisdiction, and, acting as an appellate court, it can entertain no matter not before the probate court. (*Elder v. Whittemore,* 51 Ill. App. 662.)

"The trial in the circuit court was a trial *de novo,* and while that court had power to permit appellant to

file an amended claim, yet such amended claim could not raise a new cause of action not presented to or passed upon by the probate court, the only court in which, under the statute, claims against decedents must be filed, . . ."

From these decisions we conclude that on appeal to the circuit court the latter has jurisdiction to permit amendments to claims filed in the probate court where they do not materially change the cause of action, but cannot permit an entirely new and different issue to be injected into the hearing on appeal. In the instant proceeding only one issue was presented to the probate court and to the circuit court on appeal, and that issue was tried by both tribunals. Aside from the rule that a claimant may not materially change the cause of action upon trial in the circuit court on appeal from the probate court, we think that claimants were properly precluded from filing their amended objections in the circuit court under the fundamental rule that a party may not submit a cause to the court upon one theory, and, having failed to prevail therein, seek to inject an entirely new issue into the proceeding by amendment and have the cause tried over. The objectors argue that the consideration of the amendment by the circuit court would not have necessitated any additional testimony on their part. Assuming this to be true, it would undoubtedly have required the executor to introduce additional testimony in defense of the new claim, involving the status of the security market during the depression period, the fluctuations of these securities over a considerable period of time, and the legal aspects of the additional evidence adduced. This would in effect have amounted to a new hearing.

As to the issue upon which the cause was heard and determined in both the probate and circuit courts, the objectors contend that the securities in question were, under the contract made between deceased and John F.

Clarke & Company, to be delivered to deceased or his executor on payment of the balance due on his account with such brokerage house; that the contract at the time of deceased's death was therefore *executory,* not executed, and hence the executor had no right under the statutes of this State to complete the contract, except at its own risk, without an order of the probate court; that the payment of $20,413.27 was made to Clarke & Company without such order and without the knowledge or consent of any of the objectors, who did not learn of the transaction until the filing of the first current account in March, 1932, at which time the stocks had greatly depreciated in value. A considerable portion of the objectors' brief and argument is devoted to establishing the proposition that this was an executory contract, and with that as a premise they argue that the executor was not justified in making payment to Clarke & Company without an antecedent order of the probate court. The authorities are generally to the effect that the usual test as to whether a contract is executed or executory is to determine at whose risk the subject matter of the contract is held prior to the actual delivery to the buyer, and the courts hold that if the risk or loss from injury to or destruction of the property is on the buyer, the contract is executed, and if on the seller, it is executory. (*Mark P. Miller Milling Co. v. Butterfield-Elder Implement Co.,* 32 Idaho 265, 181 Pac. 703, quoting 23 Ruling Case Law 1346, sec. 170.) Under this rule the conclusion is clear that after Clarke & Company had paid Eastman Dillon & Co. for the securities in question the risk with reference to the stock rested with Schwartz, for if the value of the stock depreciated or became worthless his obligation to pay the sum which Clarke & Company had advanced at his request for his sole use and benefit remained unaffected.

In arguing the proposition under discussion the objectors state and reiterate their contention that the executor was not justified in *completing* the deceased's contract with the brokerage house by paying the balance due on the account and accepting delivery of the speculative stocks therein without a prior order of court and without prior notice to the legatees or their attorneys of record in the estate proceeding. This argument is based upon the premise that it was an executory contract, whereas it is in fact a completed transaction, since Clarke & Company, at the written request of Harry Schwartz, the deceased, had paid Eastman Dillon & Company, $21,272.08, which Schwartz owed to Eastman Dillon & Company; that Schwartz thereby became the debtor of Clarke & Company for the amount advanced; that the executor, standing in the shoes of the deceased, had the right under the will and the statute to pay the obligation of deceased without prior order of court. Schwartz's written request of May 19, 1930, to Clarke & Company to pay the debit balance then due Eastman Dillon & Company and receive for his account securities in its possession, and compliance with the request by Clarke & Company, *ipso facto,* constituted a debt for a definite and fixed amount, for which deceased and his estate were primarily liable. Sec. 73, ch. 3, Cahill's Ill. Rev. St. 1931, provides that if the executor or administrator pays the claim before same is allowed, the court shall require him to establish the validity of such claim by competent evidence before he shall be credited therewith. Under this section of the statute the executor was not obliged to obtain an order of court to satisfy the obligation of deceased, which became its obligation as executor. Moreover, there are numerous decisions holding that an executor or administrator has the legal title to the choses in action of the deceased and is charged with the duty of collecting and reducing them to possession,

and that if they are subject to pledges, liens or charges created by the decedent in his life, he takes the legal title *cum onere.* (*Pryor v. Davis,* 109 Ala. 117, 19 So. 440; *Houghteling v. Stockbridge,* 136 Mich. 544, 99 N. W. 759; *Chorn v. Chorn's Adm'r,* 98 Ky. 627, 33 S. W. 1107.)

It is argued by the objectors that Clarke & Company merely acted as Schwartz's agent in purchasing the stock in question on margin and agreeing to deliver the stock if and when Schwartz paid for the same. There is no evidence in the record indicating that Clarke & Company acted as agent for Schwartz in the transaction, or that they purchased the stock in question and agreed to deliver the same if and when Schwartz paid for it. The evidence rather discloses that Clarke & Company did not purchase the stock, either on margin or otherwise. The record sustains the conclusion that Schwartz, deceased, owed Clarke & Company the sum of $21,272.08 advanced to Eastman Dillon & Company, and thereby became unconditionally liable for the sum advanced for his use and benefit, regardless of any question relating to the value of the stock.

For the reasons stated we have concluded that this was an executed contract between deceased and Clarke & Company, and that prior to Schwartz's death there was due and owing from Schwartz to Clarke & Company the sum advanced by them to Eastman Dillon & Company, which became a debt of the estate and one that the executor was authorized, under the provisions of the will and the statute, to pay without a prior order of court.

We find no convincing reason for reversal. The judgment of the circuit court is therefore affirmed.

*Affirmed.*

Sullivan, P. J., and Scanlan, J., concur.